FILED

2009 Jan-12  PM 12:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

UNITED STATES                               )

v.                                          )

RODERICK DEWAYNE MEANS     )

**2:95-cr-0129-JHH-TMP**

## MEMORANDUM OF OPINION REGARDING ORDER
## DENYING MOTION TO REDUCE TERM OF  IMPRISONMENT

The movant filed the above-styled motion (doc. #1677), commonly referred to as an 18 U.S.C. § 3582 motion, on May 23, 2008, requesting that this court modify or reduce his sentence pursuant to the retroactive crack cocaine amendment to the Sentencing Guidelines which became effective on November 1, 2007.  He also requests various other remedies not subject to consideration pursuant to 18 U.S.C. § 3582(c) and which, therefore, this court declines to consider.[1]  Before this court directs its attention to subject motion, it will set forth briefly relevant background, including a small portion of the lengthy history of movant's case.

On March 18, 1996, following a jury trial of approximately two months, Roderick Dewayne Means (movant) and numerous persons related to him, as well as a number of people unrelated to him, were convicted under Count 2 (of a 133 count indictment) of violating 21 U.S.C. § 846 by conspiring to

---

[1] The undersigned was the trial and sentencing judge and is unusually familiar with the facts and all the court proceedings, including the countless post conviction proceedings initiated by movant, as well as many other co-defendants.

distribute and possess with intent to distribute cocaine base (crack cocaine).[2]
Such conspiracy is herein referred to as the Means conspiracy. The following is
a summary description, supported by the evidence at trial, of the Means
conspiracy taken from the presentence investigation report prepared by the
court's probation office for purposes of sentencing movant.

> The Means conspiracy began in or about 1988 and ended
> May 25, 1995, when the indicted co-conspirators were arrested. This
> conspiracy involved the defendants named in the indictment as well
> as others who have not been indicted. Members of the conspiracy
> had varying roles and degrees of involvement and entered the
> conspiracy at various times. In furtherance of the conspiracy, the
> defendants did the following:

> The defendants obtained cocaine and crack cocaine from
> various distribution points known as "crack houses" in Birmingham,
> Alabama. These crack houses were real property which the
> defendants and others located and used to store or "stash" cocaine and
> cocaine base prior to its distribution, as a pick-up point for
> distribution to other locations, and as a point from which to sell the
> cocaine and crack cocaine to customers, including minors. This
> operation began with one crack house, and later on into the
> conspiracy, as many as 10 crack houses were operated at one time.

---

[2]   Movant was also convicted under nine related substantive counts. Numerous other counts
did not name him as a defendant or were dismissed prior to trial.  All custodial sentences
imposed upon movant were imposed to run concurrently with one another.

Some of the defendants taught indicted and unindicted coconspirators how to manufacture or "rock up" the crack from cocaine in its powdered form. Some defendants received large sums of cash for selling and distributing cocaine and crack cocaine. Some were paid in cash or drugs ("tops" or 10% of drugs sold) for selling, storing, and distributing the drugs. During the conspiracy period, minors were used to distribute drugs, and drugs were distributed near schools and playgrounds.

Firearms were used and carried by some defendants to enforce collection of drug proceeds and to protect the proceeds from drug sales. Some defendants allegedly attempted to arrange for acts of violence to be committed against a law enforcement officer and a witness.

The defendants purchased vehicles which were used to transport cocaine and crack cocaine to customers, and to travel to and from various sites in the facilitation of controlled substance distribution.

The defendants and others developed surveillance and counter surveillance techniques and information sources both within and outside of law enforcement agencies so that co-conspirators could be notified of pending searches, raids, and arrests.

The defendants and others used standard telephones, cellular and mobile telephones, and pagers to facilitate the drug distribution conspiracy and the collection and distribution of proceeds from drug distribution. Business procedures were established where coded language was used to represent drugs and monetary transactions but with minimal discussion of drugs and money. The defendants used "street names" or aliases to communicate with each other to prevent law enforcement from determining their true identities.

A "front" business, Father and Son's Car Wash, was established and maintained under the guise of being a legitimate business, in order to attempt to conceal both the drug trafficking operation and its profits. Cocaine, crack, marijuana, and drug paraphernalia such as crack pipes, crack baggies, scales, etc., were sold from the building on both a wholesale and retail basis. A system was devised for obtaining, processing, distributing controlled substances/drug proceeds, and for secreting the proceeds, which ensured the continuity of the operation.

In order to avoid the filing of Currency Transaction Reports and the I.R.S. Form 8300, some of the defendants structured financial transactions. Real [sic] personal property was bought with the proceeds from drug-related activities and was often held in nominee names to prevent law enforcement from determining the source of the proceeds and the location of the property.

The defendants and others attempted to persuade coconspirators to withhold information from investigators and the Grand Jury for the Northern District of Alabama. The defendants prepared false affidavits for co-conspirators, and attempted to persuade co-conspirators to give false statements to law enforcement and perjure themselves before the Grand Jury.

On March 19, 1996,  the court dictated into the record its *attribution of drug quantities* to the members of the conspiracy found guilty under Count 2 of the indictment. The court expressly found that all of the defendants convicted under Count 2 were actively involved in the conspiracy at least as early as May 1, 1994, and remained engaged in criminal activity related to the conspiracy until May 25, 1995. As a result of each defendant's acts in furtherance of the conspiracy, and as a result of reasonably foreseeable acts on the part of other conspiracy members in furtherance of the conspiracy, a quantity **in excess of 2.3 kilograms of cocaine base or crack cocaine** was attributed to each of such defendants, including Roderick Dewayne Means, for purposes of sentencing. Further, with regard to seven of the numerous members of the conspiracy, including Roderick Dewayne Means, the court found that each of those defendants (excluding defendants Antonio King and Jessie Turner) was also a member of the conspiracy from January 22, 1993, until May 1, 1994. As a result of such defendants' acts during that time frame in furtherance of the conspiracy and as a result of reasonably foreseeable acts on the part of other conspiracy members in furtherance of the conspiracy, a quantity **in excess of 2.7 additional kilograms of cocaine base or crack cocaine** was attributable to each of those defendants, including Roderick Dewayne Means, for purposes of sentencing.

Such amounts were premised on the March 19, 1996, conservative findings by the court as to daily sales (seven days a week) of at least six grams (sixty dime bags) of crack cocaine from at least one of the crack houses for the relevant time frame. Thus, on March 19, 1996 the court attributed to each defendant who was a member of both conspiracies, including movant Roderick Dewayne Means, **a quantity in excess of 5.0 kilograms of cocaine base or crack cocaine.**

In May 2007, the U. S. Sentencing Commission (U.S.S.C.) submitted a group of proposed amendments to the Sentencing Guidelines as they have done annually since 1987. One of these amendments, #706, represented the U.S.S.C.'s attempt to mitigate the sentencing disparity for defendants convicted of crack cocaine offenses as opposed to powder cocaine offenses. In the absence of congressional action to amend the 100:1 ratio found in the Title 21 statutes, the U.S.S.C. proposed a method to reduce the potential sentences by lowering the applicable guidelines for quantities of crack by two levels, thereby creating a ratio ranging from about 25:1 to about 80:1 within the Guidelines framework.

All of the proposed amendments, including the crack amendment, became effective on November 1, 2007. [3] Then in December 2007, following a period of public discussion, the U.S.S.C. decided to make the crack amendment retroactive. The effective date for retroactive application of the crack amendment became March 3, 2008. The U.S.S.C. also amended Guideline § 1B1.10 to include the crack amendment (hereinafter referred to as "the amended policy statement"). As such, as of March 3, 2008, the crack amendment and amended policy statement apply to all relevant sentences, old and new. All of this was done pursuant to the

---

[3] At this point, the crack amendment had no retroactive application.

U.S.S.C.'s authority found at 28 U.S.C. § 994(u) and 18 U.S.C. § 3582(c).

With that background, the court now turns to the current motion (Doc. #1677) of Roderick Dewayne Means to modify his term of imprisonment under 18 U.S.C. § 3582(c)(2).  The motion seeks the benefit of the crack amendment and the amended policy statement. The focus of the § 3582(c)(2) motion is the LIFE terms of imprisonment imposed upon movant under Counts 2, 5, 11, 99, 100, and 103.

The relevant custodial penalties for movant under Counts 2, 5, and 11 are set forth at 21 U.S.C. §§ 846 and 841 (b)(1)(A).  The custodial statutory range for movant's sentence under these counts was not less than 10 years and not more than life. The relevant custodial penalties for movant under Counts 99,100, and 103 are set forth at 21 U.S.C. §§ 860 and 841 (b)(1)(A).   Movant's base offense level was 38 and his total offense level was level 43.   The guideline range for these counts was a LIFE sentence.  As noted earlier, the court on March 19, 1996, expressly found that movant was actively involved in the Count 2 conspiracy continuously for a period that began as early as January 22, 1993 and remained in the criminal activity related to the conspiracy until May 25, 1995. As a result of his acts, during that period in furtherance of the conspiracy, the court expressly attributed to him **a quantity in excess of 5.0 kilograms of cocaine base or crack cocaine.** This attribution was confirmed while imposing the sentence on movant on May 29, 1996.

Relying on 18 U.S.C. § 3582(c)(2), movant now seeks a reduction of his sentence of Life imprisonment. He claims entitlement to that reduction under Amendment 706 which became effective November 1, 2007, and which, as of March 3, 2008, became retroactively applicable. His base offense level was 38 at the time of his sentencing on May 29, 1996. Because the amount of crack

attributed to movant exceeded 4500 grams, movant's base offense level under Amendment 706 remained a level 38 under U.S.S.G § 2D1.1(c)(1), and the applicable guideline range was not lowered. Consequently, the motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) is due to be denied.[4] See *United States v. James*, 2008 WL 4867909 (C.A. 11 (Fla)); *United States v. Walker*, 2008 WL 5007201 (C.A. 11 (Fla)). A separate order will be entered denying the motion. Movant's attention is directed to the "Notice Concerning Appeals" set out below.

## NOTICE CONCERNING APPEALS

A § 3582(c)(2) motion is a continuation of the criminal proceeding; therefore, a notice of appeal must be filed within ten days from the entry of the judgment or order being appealed. *See*, *United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir.2003); *United States v. Starks*, 2008 WL 351386 (11th Cir. 2008); *Fed. R. App. P.* 4(b)(1)(A)(i). If movant was represented by appointed counsel at trial or on appeal, movant is not required to file a new application to proceed *in forma pauperis* on appeal from the ruling on the § 3582(c)(2) motion. If movant was represented by retained counsel at trial or on direct appeal but believes he is now unable to afford counsel, movant should file an application to proceed *in forma pauperis* (accompanied by a certified copy of prison account statements for the last six months) when he files notice of appeal from the ruling on the § 3582(c)(2) motion. The Clerk is DIRECTED to provide movant with an application to proceed *in forma pauperis* form.

**DONE** this the ___12th___ day of January, 2009.

*James H. Hancock*

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4]   The court is satisfied that the sentences imposed were reasonable sentences and not greater than necessary to comply with the statutory purposes of sentencing, as set out in 18 U.S.C. § 3553(a).